Argued and submitted April 15, reversed and remanded December 9, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# TERRI DIANE MCGRATH,
*Respondent.*

(96-21978; CA A96948)

970 P2d 672

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Jason S. Newcombe argued the cause for respondent. With him on the brief was Dennett & Fredericks, P. C.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

* Deits, C. J., *vice* Riggs, J., resigned.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this criminal case is whether the state laid a proper foundation for the admissibility of defendant's Intoxilyzer results. The trial court held that the state did not and entered a pretrial order suppressing evidence of the test results. On appeal, the state argues that it established all the foundational requirements for admissibility of the test results. We agree and reverse and remand.

Defendant was arrested for driving under the influence of intoxicants and was transported to the Cottage Grove Police Station. She consented to take an Intoxilyzer test. Deputy Edward Collins administered the test in accordance with a checklist of procedures required by administrative rule. *See* OAR 257-030-0070 (approved methods for operating the Intoxilyzer 5000).

Defendant moved to suppress the results of the Intoxilyzer test. At a hearing on the motion, Collins testified that he had received training on the two models of Intoxilyzers in use, models 4011A and 5000. He testified that, "I'm certified to operate both." In response to further questioning about his qualifications, he testified:

"Q. Deputy Collins, are you trained on the Intoxilyzer 5000?

"A. Yes, I am.

"Q. Did you receive a permit to operate the machine?

"A. Yes, I did.

"Q. Do you have that permit with you?

"A. Yes, I do.

"Q. Deputy, is your permit still valid?

"A. Yes, it is."

The state then produced copies of the state police certification for the alcohol breath testing equipment, attesting to the fact that it had been tested regularly. The state also submitted a copy of the Intoxilyzer checklist, signed by Collins, with the space for his permit number filled in: "21640." In addition, the state submitted a copy of the Intoxilyzer evidence card,

which listed the results of the test, Collins as the operator, and the number "21640" as his permit number.

Following submission of the evidence, defendant argued that the state had failed to establish that Collins was qualified *at the time he administered* the Intoxilyzer test. According to defendant, Collins had testified only that he was *currently* qualified to administer the test. The trial court agreed. The court reasoned that, although the evidence indicated that Collins had a "permit number," there was no evidence as to what the permit number meant and that whatever permit that he did have was in effect at the time of the test.

On appeal, the state argues that the trial court erred in concluding that it had failed to establish the admissibility of the test results. Defendant responds that, although "the State has come very close in this case," it nevertheless failed to offer enough evidence of Collins's qualifications to administer the test.

ORS 813.300(1) provides:

> "At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than .08 percent by weight of alcohol as shown by chemical analysis of the person's breath or blood, it is indirect evidence that may be used with other evidence, if any, to determine whether or not the person was then under the influence of intoxicants."

ORS 813.160 describes the criteria to be satisfied for the admissibility of the evidence of the chemical analysis of a person's breath or blood. As relevant to this case, that statute provides:

> "(1)   To be valid under ORS 813.300:
>
> "* * * * *
>
> "(b)   Chemical analyses of a person's breath shall be performed by an individual possessing a valid permit to perform such analyses issued by the Department of State Police and shall be performed according to methods approved by the Department of State Police. * * *."

Administrative rules adopted by the Department of State Police, in turn, require operators of chemical analysis equipment to have a valid permit to administer a test, OAR 257-030-0080, and to record that information on the evidence card, OAR 257-030-0070(5)(b) (Intoxilyzer 5000 procedures).

■ The extent to which the criteria of ORS 813.160 and the applicable administrative rules have been satisfied poses a preliminary question of fact subject to OEC 104(1), which provides, in part:

> "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. * * *."

*See State v. Wright*, 315 Or 124, 129, 843 P2d 436 (1992). In reviewing the trial court's preliminary findings of fact, we draw all reasonable inferences and credibility choices that the court could have made in support of its ruling. *State v. Wilson*, 323 Or 498, 510-11, 918 P2d 826 (1996), *cert den sub nom Wilson v. Oregon*, ___ US ___ , 117 S Ct 704, 136 L Ed 2d 625 (1997).

■ In this case, we conclude that only one reasonable inference is permissible, namely, that the state established that Collins was qualified to administer the Intoxilyzer test. OAR 257-030-0080(1) provides that an officer may not operate breath testing equipment without a permit by the Department of State Police. OAR 257-030-0070(5)(b) requires an officer operating the Intoxilyzer 5000 to enter his or her name and permit number on the evidence card. Collins testified that he had received training from the state police in the operation of both the model 4011A and model 5000 Intoxilyzers, that he had a current permit, and that he was certified to operate both. The state submitted the evidence card, and it was received into evidence. It contains the date of the test, it names Collins as the one who administered the test, and it identifies his permit number. The Intoxilyzer checklist likewise stated that Collins administered the test and listed his permit number to do so.

To be sure, there was no testimony explicitly stating that the permit number that appeared on the evidence card and on the checklist, in fact, referred to Collins's permit to administer the test. We conclude nevertheless that that is the only reasonable inference from the foregoing evidence. On this record, there is nothing else that the permit number reasonably could be taken to mean. There was no testimony that it did not refer to the current permit to administer the test. There was likewise no suggestion—and no finding—that Collins was anything but credible in explaining his qualifications. The trial court did not make a choice between competing inferences as to the meaning of the permit number. It simply declined to allow the state to rely on *any* inferences in establishing the foundational requirements of admissibility. In so doing, the trial court erred.

Reversed and remanded.